SIGNED.

Dated: January 31, 2013

**James M. Marlar, Chief Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br>ALAN B LEVINE and LINDA A LEVINE,<br>Debtors. | Chapter 11<br>No. 2:11-bk-00481-JMM<br>Adversary No. 2:11-ap-00426-JMM |
| MICHAEL KAPLAN,<br>Plaintiff,<br>v.<br>ALAN B LEVINE and LINDA A LEVINE, et al.,<br>Defendants. | **MEMORANDUM DECISION** |

Before the court are the issues of an award of reasonable attorneys' fees and interest, related to a $155,000 settlement payment.

The pertinent facts are not complicated:

1.  An adversary complaint was filed, in the Levine Chapter 11 bankruptcy case, by Michael Kaplan. The date of the adversary filing was March 2, 2011.

2.  In mid-September, 2011, the parties agreed to settle the adversary proceeding, and executed a Settlement Agreement. In that Agreement, Mr. Kaplan was represented by the Scottsdale, Arizona, law firm of Nussbaum, Gillis and Dinner, P.C. (NG&D) (Ex. C to Response).

3. The relevant part of the Settlement Agreement provided that upon the bankruptcy court's approval of the settlement (the "Effective Date"), the Debtors (Levines) would wire to NG&D the sum of $155,000 (Ex. C to Response).

4. The court approved the settlement as part of the Debtors' plan on November 8, 2011.

5. The $155,000 settlement amount was not fully nor timely paid on the "Effective Date" of November 23, 2011, but instead was rather paid in instalments as follows:

| December 2, 2011 | $75,000 |
| December 28, 2011 | 39,405 |
| March 23, 2012 | 41,000 |
| | $155,405 |

6. All acknowledge that the full amount was not paid in a lump sum on November 23, 2011, due to the Levines' attorney, Stanford E. Lerch, misappropriating all or a portion of the $155,000 settlement trust to his own use.

7. Between December 2, 2011 and March 23, 2013, Mr. Lerch was able to make good on the entire misappropriation, and paid the full amount, as set forth in para. 5 above, to NG&D for Mr. Kaplan's benefit.

8. All agree that the interest calculation, on the untimely remitted funds, is $617.87 (see Ex. 2 to Motion). Thus, since Mr. Lerch paid $405 in excess of the $155,000 settlement, that sum shall be considered interest. Thus, the remaining interest burden, still unpaid, is $212.87 ($617.87 minus $405 = $212.87).

# DISCUSSION

## 1. Attorneys' Fees In General

All parties agree that Mr. Lerch's unethical conduct added expense, and generated more attorney involvement, in the effort to finally get the misappropriated funds recouped, and ultimately paid over to NG&D.

Once the last payment was made, on March 23, 2012, no further attorneys' fees needed to be expended to this end, by any firm.

The Settlement Agreement placed the legal responsibility for enforcement in the hands of NG&D. That firm proceeded to take the necessary steps to gain full payment of the $155,000.

It is not reasonable that the Nevada Callister firm also seeks fees for the NG&D effort. One firm was enough for this task. That NG&D and the Callister firm chose to collaborate does not mean that the combined fees, during the enforcement period, are reasonable. In fact, a review of the Callister time slips reflects no direct communications with either Mr. Lerch or Mr. Goodson. Instead, the Callister attorneys only appeared to be in communication with Mr. Kaplan's Arizona counsel, NG&D. This duplicated the same effort, and is not compensable. Nothing in this record would indicate that the Callister firm indeed did anything to effect the collection of the $155,405 from Mr. Lerch.[1]

On the other hand, it was NG&D that undertook the laboring oar in the effort to obtain full payment of the $155,000.

---

[1] It is also odd that a request for $20,500, for services of a "private investigator," was included in the Callister request. What was the reason to charge that against Mr. Lerch? Mr. Lerch, from the outset, openly admitted to the misappropriation, expressed remorse, and ultimately paid back the settlement funds. Therefore, under these undisputed facts, there was nothing involving the enforcement against Mr. Lerch that needed "investigation." Similar, there would appear to be no purpose for another Callister "cost" of $5,187 for "Outside Service of Paralegal in Arizona" for the Lerch misappropriation. What paralegal? Who is it? What did that person do? Why is this a valid charge against Mr. Lerch? None of these questions is answered by the pleadings.

Finally, in addition to the foregoing, Callister has no legal standing to plead here, because he was not authorized to participate in this case until his formal pro hac vice application was approved on March 22, 2012, one day before Mr. Lerch's final payment (ECF No. 36 in Adv. 11-ap-426). Thus, his formal involvement in the case came too late to be compensated for anything related to this dispute.

## 2. The NG&D Fee Application

Over the four months devoted to the full collection of the $155,000, due to the Lerch misapplication of trust funds, NG&D seeks in fees:

November 23 - 30, 2011    16.3 hours    $4,015[2]

However, the dollar amount of $4,015 for 16.3 hours is inaccurate. The total includes redacted hourly entries. The actual hourly amounts should be for 9.9 hours at various rates. This may have been taken into account in the final NG&D request.

December 1 - 28, 2011    48.9 hours    $12,833.50

The same problem exists, plus items related to ongoing litigation do not appear to be relevant to the Lerch issue.

December 29, 2011 - January 31, 2012    10.6 hours    $3,167.50

Again, some unrelated and redacted entries still have their hours and fees attached, and improperly included in the total.

---

[2] An "unrelated entry" on November 30, 2011 of $225 for JEP, 1 hour, was also erroneously included in the total.

|  |  |  |
|---|---|---|
| February 1 - 29, 2012 | 8.9 hours | $2,742.50 |
| March 1 - 23, 2012 | 25.7 hours | $9,424.50 |
| **TOTAL:** |  | **$32,183.00** |

However, the NG&D fee request is for less than that amount, or $30,748.50.

## CONCLUSION

There is no question that legal remedial action had to be taken by the NG&D firm, in the face of the Lerch defalcation. But the legal response was required to be proportional to the misconduct.

In reviewing the four months of attorney response to an immediately-admitted misconduct by Mr. Lerch, and in view of Mr. Lerch's partial payments being made fairly quickly and regularly, it would appear to this court that much of the time and effort expended by NG&D was excessive and/or unnecessary, and therefore unreasonable--at least to some extent.

After consideration of the entire matter, and understanding the facts of the case, it is this court's judgment and opinion that a reasonable attorneys' fee to be award to Mr. Kaplan, for the appropriate efforts of NG&D, is $12,500. Mr. Kaplan's costs of $181.12 will also be awarded.

A separate order will issue. Any party aggrieved thereby must appeal within 14 days of the order, and pay the appeal filing fee of $298.

DATED AND SIGNED ABOVE.

To be NOTICED by the BNC ("Bankruptcy Noticing Center") to all parties to this adversary proceeding